IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ed Schmidt Pontiac-GMC Truck, Inc.,                Case No. 3:04CV7621

          Plaintiff

   v.                                                                     ORDER

Chrysler LLC, f/k/a
      Daimler/Chrysler Motors Company LLC,

          Defendant

     This is a suit between an automobile dealer, Ed Schmidt Pontiac-GMC Truck, Inc. [Schmidt], located in Perrysburg, Ohio, and a manufacturer, Chrysler LLC [Chrysler].[1] Schmidt claims that Chrysler breached a March 30, 1994, Settlement Agreement between Chrysler, Schmidt and another dealer, Yark Oldsmobile-Jeep [Yark], located in Toledo, Ohio. That agreement resolved a dispute between Yark and Chrysler involving Schmidt's desire to relocate its Jeep franchise.

     In pertinent part, the agreement stated:

    1. Yark will immediately dismiss with prejudice [its] Protests  .  .  .  .

    2. The parties agree that [Chrysler] will not award Chrysler-Plymouth Sales and Service Agreements (C-P SSA's) to either Yark or Schmidt unless and until CP SSA's [sic] can be awarded to both without protest or litigation by any dealer.

    3. The parties agree that prior to being granted C-P SSA's, Yark and Schmidt will have met all usual and customary requirements for the appointment as a Chrysler-Plymouth dealer.

---

[1] When this suit began, the entity now known as Chrysler LLC was named Daimler/Chrysler Motors Company. The intervening change in nomenclature has no effect on the issues in this case.

4. Yark and Schmidt agree that neither will protest the other's award of a Chrysler-Plymouth SSA.

[Doc. 35, Ex. 3].

Yark later bought Valiton Chrysler-Plymouth [Valiton], also located in Toledo. Unlike Yark and Schmidt when they entered into the 1994 settlement agreement, Valiton sold Chrysler automobiles. Chrysler approved the sale, which effectuated a transfer to Yark of Valiton's right to sell Chrysler vehicles.

Schmidt considers Chrysler's approval of Yark's purchase of Valiton without concurrently granting Schmidt the right to sell Chrysler automobiles to be a breach of the 1994 Settlement Agreement. According to Schmidt, the agreement gave it and Yark equivalent access to a Chrysler franchise: if one got one, under the agreement, the other would also.

Chrysler contends that Schmidt misreads the agreement's terms, which specifically state that "[Chrysler] will not *award* Chrysler-Plymouth Sales and Service Agreements (C-P SSA's) to either Yark or Schmidt unless and until CP SSA's [sic] can be awarded to both  .   .   ." [Emphasis supplied]. According to Chrysler, its approval of Yark's purchase of Valiton [which Chrysler describes as a "buy-sell"] was not an "award," as that term is used in the settlement agreement.

This is so, Chrysler asserts, because the automobile industry distinguishes between a manufacturer's "award" of a franchise and a manufacturer's grant of permission to the holder of an existing franchise to sell it to another. Schmidt contends that the meaning of the term "award" is not so limited.

Earlier in these proceedings, I issued a preliminary injunction barring Chrysler from authorizing the relocation of Al Smith Chrysler Dodge, now located in Bowling Green, Ohio, to within ten miles of Schmidt. *Ed Schmidt Pontiac-GMC Truck, Inc. v. DaimlerChrysler Motors Co.,*

2

*LLC*, 503 F.Supp.2d 894 (N.D.Ohio, 2007).[2] In issuing the injunction, I addressed the parties' contentions about the meaning of the term "award" in detail and at length. *Id.* at 899-901.

Pending is Schmidt's motion for partial summary judgment. [Doc. 120]. Chrysler filed it opposition to that motion [Doc. 138] on December 24, 2007. Plaintiff filed its reply [Doc. 145] on January 14, 2008.

Chrysler supported its opposition to plaintiff's motion for partial summary judgment with an affidavit from a former employee, Lisa Gibbons, who participated in the negotiations resulting in the 1994 Settlement Agreement. According to her affidavit:

> 8. It is important to understand that in industry terms "award" in paragraph 2 [of the 1994 Settlement Agreement] did not and does not apply to either Schmidt or Yark acquiring the Chrysler-Plymouth lines through the purchase of any interests in an existing Chrysler-Plymouth dealership. In the automotive industry, such a transaction is commonly called a "buy-sell." . . . In industry terms, an award is the granting of a new line-make or also commonly known as a "point" that does not already exist in a given market – a buy-sell is simply a proposal to transfer the interests of an existing dealership. Dealers generally pay good and valuable consideration to the selling dealer as part of a buy-sell transaction. This is another reason why buy-sells are not referred to in industry terms as an "award."
>
> 9. I believe every party to the 1994 Settlement Agreement should have understood that paragraph 2 did not apply to a buy-sell. In addition, each party was represented with their counsel present and was free to consult with such counsel about any questions of understanding. I do not recall any confusion raised by any party on this point. Chrysler can only agree to do what it can control. As a corporate representative, I would not have bound Chrysler to an agreement when a condition triggering the agreement was not within Chrysler's control. I would have been clear

---

[2] Ohio law entitles dealers to protest introduction of another dealer in the same line of vehicles into an area within ten miles of the dealership. O.R.C. § 4517.50(A). This protects dealers from actions by a manufacturer, with its superior economic strength, which would bring a competitor selling the same line of vehicles into adversely close proximity to an extant dealer. The 1994 settlement agreement grew out of Yark's exercise of its protest rights under this provision. Part of the rationale for the injunction in this case was the risk to Schmidt's protest rights if injunctive relief was not provided to it during the pendency of the instant litigation. 503 F.Supp.2d at 904-05 (discussing irreparable harm if injunction did not issue).

3

on this point with the other parties to the 1994 Settlement Agreement at the time it was executed. Chrysler can control to whom it awards a new point. In contrast, Chrysler has limited control over the outcome when one dealer sells its dealership to another. In Chrysler's standard dealer agreements, it provided that Chrysler would not unreasonably withhold its consent to a proposal to transfer the interests in a dealer agreement meeting its standard and usual requirements for being a Chrysler-Plymouth dealer. Moreover, as a practical matter, Chrysler's ability to refuse to consent to or approve such a transfer was limited.

[Doc. 138, Ex. 6].

Schmidt challenged the admission of Gibbons' affidavit. I granted its motion to strike in part; I also granted leave to Chrysler to supplement the affidavit to show the basis for her assertions of personal knowledge. *Ed Schmidt Pontiac-GMC Truck, Inc. v. DaimlerChrysler Motors Co., LLC*, 2008 WL 668242 (N.D. Ohio).

In light of Gibbons' affidavit, Chrysler has been granted leave to supplement its motion for summary judgment. In conjunction with its supplementation, Chrysler has filed the instant motion seeking leave to file two additional declarations in support of its motion for summary judgment. [Doc. 190]. The affiants, like Gibbons, state that the term "award," as used in the auto industry, has a limited meaning, or at least a meaning that does not encompass a "buy-sell" of an existing dealership.

Schmidt objects to the motion for leave to file the additional declarations. It argues: 1) the additional declarations are untimely, as the meaning of the term "award" has been central to this case since sometime before Schmidt's motion for a preliminary injunction; 2) in ruling on that motion, I considered the evidence then before me, and, as a matter of law, rejected Chrysler's claim that the term has a special meaning; and 3) Chrysler's present assertions about the meaning of "award" are inconsistent with earlier representations that the 1994 settlement agreement was unambiguous.

4

Chrysler has, as Schmidt also points out, not told me why it took so long for it to get these additional declarations. Nor has it acknowledged their likely potentially disruptive impact on an already aged case and oft-delayed schedule. At the very least, Schmidt will have to depose the declarants. If it needs time to procure responsive evidence, it should have it. The time taken to get that evidence, or, at the very least, to supplement, if not rewrite the briefs relating to the pending motion for summary judgment, may lead to another postponement of the trial date.

Many judges – perhaps most – would at this point say to Chrysler, "too late; too bad." I decline to do so. To the extent that Schmidt suggests that Chrysler makes its assertions about the meaning of the term "award" in bad faith, I disagree – though I do agree that it could have been a lot more timely in getting and submitting these witnesses and their statements.

I am persuaded that, given the centrality of that term to the 1994 settlement agreement, I should not bar efforts to introduce otherwise pertinent evidence on that issue.

I am also persuaded that, despite my determination during the preliminary injunction proceedings that the term "award" does not mean what Chrysler claims it means, that issue remains open for final adjudication. A ruling in conjunction with a preliminary injunction does not have law of the case status. *William G. Wilcox, D.O., P.C. Employees' Defined Ben. Pension Trust v. U.S.*, 888 F.2d 1111, 1114 (6th Cir. 1989) ("Because of the lesser burden of proof required to support a motion for preliminary injunction as contrasted with a motion for summary judgment, a trial court's disposition of the substantive issues joined on a motion for extraordinary relief is not dispositive of those substantive issues on the merits."). I simply ruled on the basis of what was then before me; I

5

know of no rule that bars a party from going out and getting more evidence before a case is finally adjudicated.[3]

Granting the motion for leave to file these declarations does not resolve the dispute about the meaning of the term "award." It simply opens the way to giving the trier of fact all the evidence that both parties can obtain and will want to offer on that issue. That's all.

In allowing the motion for leave to bring these declarations into the case, I want to make clear that Schmidt will be given whatever time and opportunity it wants and needs to procure and provide its own evidence on this issue.

It is, therefore,

ORDERED THAT defendant Chrysler's motion for leave to supplement its opposition to plaintiff's motion for partial summary judgment with additional declarations [Doc. 190] be, and the same hereby is granted.

A status/scheduling conference is set for July 2, 2008 at 2:00 p.m.

So ordered.


s/James G. Carr
James G. Carr
Chief Judge

---

[3]

While Chrysler has not violated a *rule*, its dilatory presentation of evidence it clearly deems crucial, and, to some extent, its bobbing and weaving in its arguments offends a *policy*: namely, that the parties are to help conserve judicial resources, rather than cause them to be squandered. Overall, my time tending to this case would have been expended much more efficiently had Chrysler presented all its evidence during the preliminary injunction proceedings.