IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ed Schmidt Pontiac-GMC Truck, Inc.,    Case No. 3:04CV7621

Plaintiff,

v.                                      ORDER

Chrysler Motors Company, LLC,

Defendant,

This is a breach of contract suit between a motor vehicle dealer, Ed Schmidt Pontiac-GMC Truck, Inc. [Schmidt] and Chrysler Motors Company [Chrysler] in which I granted Schmidt leave to amend its complaint to state a cause of action for spoliation of evidence. The claim is based on Chrysler's alleged failure to institute a litigation hold, keep and retain evidence pertinent to the breach of contract claim, preserve hard drive data intact on five computers prior to an agreed on and court-approved mirror imaging and destruction of the system registry on another computer. These acts on Chrysler's part, Schmidt alleges, were done willfully with the intent to disrupt its prosecution of its contract claim against Chrysler.

Pending is Schmidt's motion for summary judgment as to its spoliation claim. [Doc. 193]. For the reasons that follow, the motion shall be denied.

**Background**

On October 4, 2004, immediately after filing this suit, Schmidt's counsel faxed a courtesy copy of the complaint to a Chrysler attorney, Judith Shumaker-Holland, asking Chrysler to institute a litigation hold as to communications and documents relating to Schmidt's relationship and dispute with Chrysler. Schmidt represents, and Chrysler does not dispute, that Chrysler had been aware since September, 2003, of the possibility of litigation.

When asked what she did in response to Schmidt's request to preserve documents and records, Shumaker-Holland, after Chrysler's attorney interposed an attorney-client privilege objection, simply stated, "I took action to preserve documents." Two Chrysler employees [Holderness and Hurst], to whom she would have directed a litigation hold directive, indicated that they could not recall receiving such directive. Holderness testified that he saved e-mails that he thought he would need for future reference. He also stated:

> There are more documents saved in this regarding the Schmidt [sic] than I have seen in anything else that I have done. We started saving documents very early in the process and minutia that you folks have been given. I saved Lotus Notes regarding conversations between Tom [Schmidt] and Richard [Yark] and I about nothing. We have gone – we saved over and above what we normally would save for this file.

[Holderness Dep., at 75].[1]

Holderness also testified:

> we also – to continue, also went to the other people that have been involved and asked for them to produce all of their personal notes, e-mails, any correspondence, all documents pertaining to Schmidt and Yark if they were not already in the dealer file.

---

[1] "Yark" is Richard Yark, of Yark Oldsmobile Inc., which acquired a Chrysler franchise through purchase of another Chrysler dealer in Toledo, Ohio. Schmidt claims that Chrysler, by approving that buy/sell agreement, breached a 1994 settlement agreement between it, Yark and Chrysler, whereby if Chrysler awarded a franchise to either Yark or Schmidt, it would also award a franchise to the other.

[*Id*., at 34].

Schmidt claims that Chrysler did not conduct a reasonable search for responsive information. In response, Chrysler points to various employees' testimony as to how they undertook to retrieve pertinent electronically stored data.

Hurst testified that, though he did use a search function, he searched his hard drive manually, item by item, scrolling through all his correspondence. Mr. Grady stated that he checked the e-mails that he currently had and his electronic files, including Word and Excel. Mr. Dimond stated that he scanned his inbox and any file folders "email by email." He also testified that employees in his department searched for responsive documents.

Holderness answered affirmatively in response to counsel's question, "[D]id you personally go to your Schmidt file to provide copies of everything that was in that file [and] . . . do any search for deleted Schmidt e-mails or electronic items?" He also testified that he searched his whole "C drive" and went through Word documents to see if there were letters or other information he had saved within his computer. In addition, Holderness stated:

> We also -- to continue, also went to the other people that have been involved and asked for them to produce all their personal notes, e-mails, any correspondence, all documents pertaining to Schmidt and Yark if they were not already in the dealer file.

[*Id*. at 34:3-18].

Despite this testimony, Schmidt contends that Chrysler did not give those employees sufficient guidance to ensure comprehensive retrieval and retention of pertinent evidence. It specifically alleges that during the year prior to this suit when Chrysler was aware of the likelihood of litigation, Chrysler did not tell its employees to retain all correspondence, documents and e-mails pertaining to the dispute with Schmidt.

3

Schmidt also asserts that Chrysler gave inadequate instructions once the litigation hold was in place to enable the employees to conduct a thorough and effective search. Schmidt's allegations suggest that Chrysler left the employees largely to their own devices, instead of preparing a uniform protocol and implementing standard procedures designed to extract all available information. Chrysler, as noted, has declined to describe just what it did to implement an effective litigation hold.

During the course of this litigation I issued an order to Chrysler to produce certain employees' hard drives for mirror imaging and inspection by a computer forensic firm it retained. With regard to five of the computers, Chrysler installed computer upgrades which, according to Schmidt, permanently altered their hard drives' content. As a result, any data that a computer user had deleted, and which otherwise might have been retrievable via an intact mirror image was beyond recovery. Schmidt attributes a malicious intent to the upgrade installation.

In response, Chrysler states that the upgrades were part of a company-wide upgrade program encompassing not merely the five computers, but approximately 30,000 computers.

Schmidt also alleges that the destruction of the system registry files of one of the computers constituted spoilation. Chrysler's expert witness testified, in contrast, that such destruction resulted not from deliberate human action, but from "corruption" of the registry. It supported that expert opinion with the testimony of the computer's user, who testified as to a want of understanding or ability to tamper with the system registry.

**Discussion**

In Ohio, the elements of a spoliation claim [*i.e.*, a claim for interference with or destruction of evidence] are:

> (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence

>by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts.

*Smith v. Howard Johnson*, 67 Ohio St.3d 28, 29 (1993).

In the context of a spoliation claim, "'willfulness'" contemplates not only an intentional commission of the act, but also a *wrongful* commission of the act." *Drawl v. Cornicellia*,124 Ohio App.3d 562, 567 (1997) (emphasis in original). In other words, proof that evidence was deliberately destroyed is not sufficient; a plaintiff must prove that the defendant acted with the intent to deprive another of the evidence that it deliberately destroyed.

Schmidt is not entitled to summary judgment on its spoliation claim.

First, I agree with Chrysler that failure to implement a litigation hold is not an element of a spoliation claim. Nor, in my view, would such implementation be an affirmative defense to such a claim. While whether a party implemented or failed to implement an implementation hold, or whether its directive to its employees was comprehensive and sufficient might be evidence of culpable intent, no liability results simply from either failure to implement a litigation hold or defects in its scope and substance.

In this case, to be sure, a jury could find that no litigation hold was in place for the year between Chrysler's initial awareness of possible litigation and filing of this suit. But that, alone, is not sufficient to impose liability on Chrysler for spoliation of evidence. A jury might also conclude, if it credited Schmidt's version of the insufficiency, that the litigation hold, whatever it was, was not sufficiently specific and comprehensive to ensure retrieval and retention of pertinent data. But on the basis of the present record, that's a decision for the jury, and not for me to make by granting Schmidt's motion for summary judgment.

Although just what "action" Shumaker-Holland took "to preserve documents" is not known, the testimony of various Chrysler employees as referenced above, if credited by the jury, would, in any event, give rise to an inference that Chrysler implemented a litigation hold once Schmidt filed suit. The jury could also find that the hold resulted in substantial retention of then-extant pertinent documents.

With regard to destruction of documents during the year before Schmidt filed suit, a jury might fairly infer that e-mails and other computer-generated data were destroyed by deletion, and that such destruction was deliberate. But there is no direct evidence that Chrysler employees who deleted such data did so with an eye to avoiding its disclosure to and use by Schmidt when and if litigation arose. There is, in other words, no direct evidence of intent to deprive Schmidt of useful evidence in this case during that period. It's up to the jury to determine whether the circumstances persuade it that it is more likely than not that such deletion, rather than being routine, was done, as required by *Drawl, supra*, with culpable intent.

Thus, I conclude that there is a genuine dispute of material fact as to whether, even if Ms. Shumaker-Holland's "action to preserve documents" [whatever that "action" was] was neither timely nor effective, Chrysler intentionally spoliated data that it should have kept available for Schmidt.

There is likewise a dispute of material fact as to whether, by upgrading five of the computers covered by the mirror imaging order, Chrysler *intentionally* defeated implementation of that order. Here, again, it's up to the jury to determine whether the upgrading was, in fact, part of an overall program, and if so, whether the computers were not kept out of the program until the imaging occurred because Chrysler intended to deprive Schmidt of evidence useful in its case.

Likewise, the evidence is disputed as to the destruction or corruption of one computer's system registry.

Thus, as to each aspect of Schmidt's claim, the issue of intent is in dispute.

Whether evidence – and not just data that might have led to evidence – was lost is likewise in dispute. Schmidt, of course, finds itself in a quandary: it is confronted by only "known unknowns" – the likelihood that, at least for a year, discoverable and possibly admissible data might have been deleted. But it has no way of knowing what that data was. So assessment of its usefulness is impossible.

But that impossibility is not enough to grant summary judgment on its spoliation claim. Schmidt retains the burden of proving that Chrysler deliberately destroyed *evidence* with an intent to deprive Schmidt of that *evidence* and thereby "disrupt" Schmidt's case against it. *Smith, supra; cf. Bugg v. Am. Std., Inc.*, 2005 WL 1245043, *5 (Ohio App.) (noting cases restricting spoliation claims to destruction of evidence).

Whether Schmidt can satisfy this burden remains to be seen; in any event, given the present state of the record, that is a decision for the jury, rather than for an order granting summary judgment in Schmidt's favor.

## Conclusion

In light of the foregoing, it is hereby

ORDERED THAT plaintiff's motion for summary judgment on its spoliation claim [Doc. 193] be, and the same hereby is overruled.

So ordered.

/s/ James G. Carr
James G. Carr

7

                    Chief Judge